

...TRICT ...
...CT OF NEBRASK.

15 MAY -1  PM 4: 0

## In the United States District Court
### for the District of Nebraska

OFFICE OF THE CLERK

| | |
|---|---|
| MARK PARKER, GLORIA J. PAYER AND THOSE SIMILARLY SITUATED ) ) ) ) | $8:15CV 159$ <br> DOC. 8:15CV NO. |
| **PlaintiffS** ) | |
| ) | **COMPLAINT** |
| **v.** ) | |
| THURSTON COUNTY, NEBRASKA ) | **Related to Civ. 71-O-114** |
| CAROLINE FRENCHMAN, DARREN ) | **(The Honorable Richard  E.** |
| WOLF, GEORGIA MAYMBERRY, ) | **Robinson)** |
| LEONARD PETERS, GREG JUMP, ) | |
| DAN TRIMBLE, MARK ENGLISH ) | |
| THE VILLAGE OF WALTHILL, ) | |
| AN ENTITY WITHIN THE OMAHA ) | |
| RESERVATION and WITHIN ) | |
| THURSTON COUNTY, NEBRASKA, ) | |
| MIKE GRANT, GWEN PORTER ) | |
| VIDA STABLER, DREW KINGARE ) | |
| MICHAEL WOLFE, SR., EARLENE ) | |
| HRADEC, RANDY URBANEC ) | |
| DOUGLAS L. LUEBE, NORA H. GOLL, ) | |
| AND SHELLY PEREZ, and the ) | |
| STATE OF NEBRASKA ) | |
| ) | |
| **Defendants** ) | |

**Plaintiffs for their causes of action against Defendants and on behalf**

**of those for are similarly situated, state as follows:**

1

## I. PRELIMINARY STATEMENT

1.    a. This is a civil action whereby the Plaintiffs, Mark Parker, Gloria J.
Payer, and those  individual members of the Omaha Tribe similarly situated,
herein after referred to as the Plaintiffs,  seek monetary damages,
declaratory judgment and permanent injunctive relief, costs and attorney
fees from the Defendants named below, for exceeding Defendants' criminal
jurisdiction by exercising jurisdiction over traffic offenses which did not
occur on Nebraska "*Public Roads*" and "*Highways*"  but rather  upon the
"*streets*"  located within the villages of the State of Nebraska and upon the
"*BIA and Tribal roads*" located on the Omaha Reservation.

b. Defendants'  usurpation of jurisdiction  has violated  and will
continue to violate Plaintiffs' rights to be free from Defendants' unlawful
stoppings, harassments, arrests, bondings, prosecutions, trials, and
incarcerations,  said rights having been  guaranteed by (1) the First, Fourth,
Fifth, Seventh, Ninth, Tenth, and Fourteenth Amendments to the United

2

States Constitution, (2)  federal statutes, and (3) treaties and agreements.

     c. Said violations have resulted in  damages to the Plaintiffs.

     d. Having laid dormant for over forty ( 40) years, the time has come to enforce the opinion/decision of the Honorable Richard E. Robinsono, then Chief Judge for the District of Nebraska,  in  <u>Omaha Tribe of Nebraska v. Village of Walthill</u>, 334 F. Supp. 823 (D.Neb. 1971), where Judge Robinson found that Nebraska's exception to retrocession of motor vehicle offenses applied only to those occuring on "State", "Public" "Roads and Highways" and implicitedly did not apply to the "streets of Walthill" or the "roads" of the  "BIA" and the "Omaha tribes" which were built and maintained by non-state and non-county funds but rather federal and tribal funds.  Said opinion was affirmed by the Eighth Circuit Court of Appeals in <u>Omaha Tribe of Nebraska v. Village of Walthill</u>, 460 F.2d 1327 (8th Cir. 1972) and a writ of certiorari was denied by the Supreme Court at 409 U.S. 1107 (1973).    ;

## II.  JURISDICTION AND VENUE

2.    These actions arise under 42 U.S.C.  1983 and 1985 in that they involves Defendant's violations of Plaintiffs' Civil Rights which arise from

Defendants' violations of the United States Constitution, United States statutes, and decisions of United States federal Courts and treaties.   This Court has jurisdiction of the action under 28 U.S.C. 1331 (Federal Questions),  28 U.S.C. 1343 (Civil Rights), 28 U.S.C. 2201 (Declaratory Judgment) and 42 U.S.C. 1985 (Deprivation of Civil Rights).  More particularly, this Court has jurisdiction of this civil action pursuant to

a.  28 U.S.C. 1331 in that it arises under the Constitution, laws, and treaties of the United States;

b.  28 U.S.C. 1343 in that it arises because Plaintiffs, and those similarly situated,  seek

(1)    recovery of damages for injury to their persons because Defendants have deprived them of their rights and privileges of  United States citizens  by acts which were done in furtherance of a conspiracy setforth  in 42 U.S.C. 1985;

(2)    recovery of damages from  Defendants because they have failed to prevent and/or they aided in preventing any of the wrongs mentioned in 42 U.S.C. 1985 of  which they had knowledge were about to occur and power to prevent in violation of Defendants' constitution, and

4

statuory rights.

(3)     redression of the deprivation, under the color of State law, statute, custom or usage of any right,  privilage or immunity secured by the Constitution of the United States and by acts of Congress proving for equal rights of citizens of citizens or of all persons within the jurisdiction of the United States; and

(4)     recovery of damages and securing equitable and other relief under any Act of Congress providing for the protection of civil rights.

d.  28 U.S.C. 2201 in that it seeks a declaration that the "streets of Walthill" and Omaha Tribal and BIA roads are  state public roads and highways and thus jurisdiction of violations occurring therein belongs to the Omaha Indian Tribe.

3.    Venue is appropriate under 28 U.S. 1391(b)(1) and (2) since Defendants are residents of Nebraska and the events giving rise to the claim occurred in Nebraska.  Place of trial is appropriate because the original case upon which this case is based was filed in Omaha and preceded over by the Honorable Richard E. Robinson, Chief Judge, United States District Court for the District of Nebraska(hereinafter after referred to as Judge Robinson.)

5

### III.  PARTIES

#### A.  PLAINTIFFS

4.    Plaintiff, Mark Parker,(hereinafter referred to as Plaintiff Parker), at all time relevant herein, was and  is an enrolled member of the Omaha Indian Tribe; a citizen of the United States of America and of the State of Nebraska;  and a citizen and resident of  the District of Nebraska.

5.    Plaintiff, Gloria J. Payer,(hereinafter referred to as Plaintiff Payer),  at all time relevant herein, was and  is an enrolled member of the Omaha Indian Tribe; a citizen and resident of  the United States and of the State of Nebraska; and a citizen and resident of the District of Nebraska.

#### B.  PROPOSED CLASS PLAINTIFFS

6.    The named-Plaintiffs seek  to bring this case as a class action on behalf of themselves and other native American Indians similarly situated with the named- Plaintiffs,  who have been harashed, stopped, arrested, bonded, overcharged, prosecuted, tried, coerced, sentenced and/or incarcerated for alleged violations of traffic offenses which did not occur on Nebraska "*Public Roads*" and "*Highways*"  but rather  upon village "*streets*"  and upon

6

the "*BIA and Tribal roads*" located within the boundaries of the Omaha Tribe
Reservation.

a.     *NUMEROSITY*:  The proposed  Class is so  numerous that joinder
of all members is impractical.  On information  and belief, hundreds of
person fall within the definition of the Class aleged in paragraph 6.

b.     *COMMON QUESTIONS OF LAW AND FACT*.  There are questions
of law and fact common to the class including:

(1)     Whether jurisdiction for offenses occuring on   village
"*streets*" and the "*BIA and Trial roads*" located within the Omaha Tribal
Reservations were retroceded to the United States by the State of
Nebraska.

(2)     Whether the Defendants violated statutory and
constitutional provisions when they harassed, stopped, arrested, bonded,
overcharged, prosecuted, tried, coerced, sentenced and incarcerated native
American Indians for alleged violations of traffic offenses which did not
occur on Nebraska "*Public Roads*" and "*Highways*"  but rather  upon village
"*streets*"  and upon the "*BIA and Tribal roads*" located within the boundaries
of the Omaha Tribe Reservation.

7

(3)    Whether Class members have a right to damages,

restitution, and/or expungement from each and every record which contain

any type of information about  their stopping, arresting, bonding, charging,

prosecuting, trying, sentencing, and/or incarcerating by the Defendants.

c.    *TYPICALITY*:    The named-Plaintiffs' claims are typical of the

claims of the Class member because they are based on the same factual,

legal and remedial theories as the claims of the Class.

d.    *ADEQUACY OF REPRESENTATION*.  The named-Plaintiffs can and

will fairly and adequately represent and protect the intersts of the Class

because the named-Plaintiffs are similarly situated with, and have suffered

simlar injuries as the members of the Class they seek to represent.  Plaintiff

has no interrsts that conflict with or are antagonistic to the interests of the

entire Class.  Plaintiffs have retained attneys competent and experienced in

class actions who will vigorously prosecute this litigation.

e.    *PREDOMINANCE AND SUPERIORITY*.  A class action is superior

to ay other available method for the fair and efficient adjdication of the

controvers because:

(1)    Common questions of law and fact predominate over any

8

individual questions that may arise.

(2)     No member of the Class has a substantial interest in individually ontrolng the prosecution of a separate action.

(3)     Upon informatin and belief, there are no pending lawsuits concerning this controversy.

(4)     It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in this district and this forum is conient to the parties, the class members and the potential witnesses.  The resolution of the claims of all Class members in a single forum, and in a single proceeding wouuld be a fair and efficient means of resolving the issues raised in his litigation.

(5)     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the Defendants.

(6)     The class is specifically identifiable to facilitate provision of adequate notice and there will be no significan problems managing this case as a class action.

(7)     Resolution of class members' claims in this single class

action is superior to resolution of this controversy through the filing of a

host of individual actions as a matter of efficiency, consistency, and in that

it removes economic and other barriers to class members pursuing their

claims.

## C. DEFENDANTS

7.     Defendant Thurston County is a body politic, and subentity of the

Defendant, State of Nebraska.

8.     Defendants Caroline Frenchman, Darren Wolfe, Joel Lamplot, Leonard

Peters, Greg Jump, Dan Trible and Bullet Beaudette are County Board

Members of Thurston County, Nebraska and are being sued in their official

capacity.

9.     Defendant, Douglas I. Luebe, (here in after referred to as Judge Luebe,

at  times relevant herein, was and is the County Judge of Thurston County,

Nebraska and is being sued in his official capacity.

10.    Defendant, Nora H. Goll, hereinafter referred to as County Attorney

Goll, at  times relevant herein,  was and is the Attorney of Thurston County,

Nebraska; was and is responsible for the and management and supervision

10

of the  County Attorney's Office and its employees; and is being sued in her official capacity.

11.    Defendant, Shelly Perez, (herein after referred to as Sheriff Perez), at time relevant herein, was and is the Sheriff of Thurston County, Nebraska, was and is responsible for the and management and supervision of the Sheriff Department and its employee; and is being sued in her official capacity.

12.    Defendant, the Village of Walthill is a Nebraska municipal corporation, a body politic of the Defendant, Thurston County, and of the State of Nebraka, which, among other things, Plaintiffs believes and understands operates amd operated its Police Department in accordance with an Interlocal Agreement with Defendant, Thurston County, Nebraska, in particular, Defendant Sheriff Perez.

13.    Defendants, Mike Grant [Chairman], Gwen Porter [Vice Chairman], Vida Stabler, and Drew Kingare are Trustees of the Village of Walthill, Nebraska and are being sued in their official capacities.

14.    Defendant,  Brad Irwin, is the Chief of Police of said Village and is being sued in his official capacity.

11

15.    Defendant, the State of Nebraska is one of 50 constituent politcal entities that shares its sovereighty with the United States federal government.

### III.  STATEMENT OF FACTS

### A.  BACKGROUND FACTS

16.    On August 15, 1953. the Congress of the United State enacted Public Law 280 [codified as 18 U.S.C. 1161 and 28 U.S.C. 1360] and thereby ceded to the State of Nebraska jurisdiction over civil cause of action and jurisdiction over offenses committted by or against Indians on or arising on Indian Reservations within the State of Nebraska to the same extent that the state had jurisdiction over other civil actions or criminal offenses. Thereafter, Nebraska assumed and execised such jurisdiction.

17.    On April 11,  1968, Congress effectively amended Public Law 280 when it enacted Public Law 90-284 which allowed the States, [specifically in this case, Nebraska]  to retrocede jurisdiction which had been previously conferred by  the original Public Law 280.  The amendment was codified into 25 U.S.C. 1323.

12

18.    To explore retrocession, the Executive Board of the Nebraska

Legislative Council appointed a Special Committee on Indian Law

Enforcement and Civil Rights which, in turn, established a Study

Committee on Indian Affairs, No. 73.   In its study, the Committee

recommend[ed] returning jurisdiction to the federal government provided

the Bureau of Indian Affairs c[ould] give assurance that it w[ould] assume

the day to day law enfocement duties.

19.    Consequently, on April 16, 1968, acting pursuant to 25 U.S.C. 1323,

the Nebraska Legislature adopted Legislative Resolution 37, to "retrocede

to the United States all jurisdiction over offenses committed by or against

Indians in the areas of Indian country located in Thurston County, Nebraska

except those offenses involving the operation of motor vehicles on PUBLIC

ROADS OR HIGHWAYS." [Emphasis added]   The legislature further resolved

that the "Executive Board of the Legislative Council [was] ...authorized and

directed to take all necessary action too put [said] resolution into effect...."

20.    The reasons that Nebraska adopted Legislative Resolution 37 are

contained in the "whereas" clauses of Resolution 37 which can be properly

be used to interpret the Resolution.   In said "whereas" clauses, the

13

Nebraska Legislature recognized that

a. the assumption of jursdiction had led to steadily increasing costs for law enforcement in Thurston County, Nebraska;

b. Thurston County, because of restrictions imposed upon the original grants of land, did not have a sufficient tax base to meet the increasing costs; and

c. the State had assisted the County but its costs had increased each biennial.

21. After consulting with the Omaha and Winnebago tribes, the Secretary of the Interior, acting under 25 U.S.C. §1323 and Executive Order No. 11435, accepted on behalf of the United States the retrocession of criminal jurisdiction only over Omaha Indian country and not Winnebago Indian country. The retrocession became effective as to the Omaha Reservation on October 2, 1970.

22. Unfortunately, the Defendants and/or their predecessors failed to take the neccessary action to put the resolution into effect. Instead, the Defendants and/or their predecessors have continued, among other things,

14

to stop, harass, arrest, set bond, prosecute, try,  coes  sentence, and

incarcerate members of  the Omaha Indian Tribe for alledged offenses that

occurred on "BIA  and Tribal Roads" and the "Streets of Walthill" which are

**NOT** State Public Roads or highways.

23.   Consequently, the Council of the Omaha Tribe of Nebraska on behalf of

members of the Omaha, including the Plaintiffs herein, had to file a

Complaint against  the Defendants [and/or their predecessors] in the United

States District Court for the District of Nebraska, over which the Judge

Robinson preceded.


## B.  JUDGE ROBINSON' DECISION

24.  On February 19, 1971, Judge  Robinson heard Plaintiffs' Motion for

Temporary Injunction and Defendants' Oral Motion for Summary Judgment.

25 . In support of said motion, Judge Robinson received Exhibits, heard

argument, established a briefing schedule and then took the motion under

advisement.

26.    On March 10, 1971, the Plaintiffs submitted the Affidavit of Alfred Du

Bray who was the superintendenr of the Winnebago Agency of the Bureau of

15

Indian Affairs, Department of the Interior. Mr. Du Bray attached to his
Affidavit a map prepared by personnel of the Winnebago Agency under his
supervision and identified as Exhibit "A", along with "a Resolution dated
July 15, 1969, of the Thurston County Board of Supervisors, marked Exhibit
"B", the Report of the Legislative Council Study Committee on Indian Affairs,
No. 173, marked Exibit "C" and a letter of Clyde Storie [then Sheriff of
Thurston County] dated May 6, 1969 to the President of the United States,
marked Exhibit "D"."

27.    On April 14, 1971, Judge Robinson heard arguments on the Motion for
Summary Judgment and took the motion under advisement.

28.    Later, on November 4, 1971, Judge Robinson, along with Judge Urbom
and Judge Denney,  heard the motion on Retrocession which Judge
Robinson then took under advisement.

29.    On November 23, 1971, Judge Robinson in Omaha Tribe of Nebraska v.
Village of Walthill, 334 F.Supp. 823 (1971), 460 F. 2d 1327 (8th Cir. 1972),
cert. denied 409 U.S. 1107 (1972) recognized that

    a.    Congress [had] authorized the United States to accept
    retrocession by any state...of all or any measure of the criminal or civil

16

jurisdiction;

b.     **Pursuant to said statute, the State of Nebraska made an offer of retrocession in which it, among other things,  retained jurisdiction for all MOTOR VEHICLE OFFENSES committed on the STATE PUBLIC ROADS OR HIGHWAYS.  The United States accepted the offer of retrocession.**

30.    **Thereafter, "the BIA "set up a Tribal Court and a temporary Trial jail.  A judge for the Tribal Court was appointed and nine Indian policemen were employed.  A substantial federal grant financed these implementations."**

31.    **Judge Robinson found and held that "[t]he offer of retrocesson [by the State] retained jurisdiction for all motor vehicle offenses committed on the STATE PUBLIC ROADS or HIGHWAYS and this jurisdiction w[ould] remain exclusively within the State of Nebraska."  (Emphasis added.) The Omaha Tribe of Nebraska v. The Villiage of Walthill, 334 F.Supp. 823(D. Neb. 1971) , aff'd 460 F.2d 1327 (8th Cir. 1972) and cert. denied, 409 U.S. 1107 (1973).**

### C.  JUDGE ROBINSON'S ORDER

32.    **Afterwards, Judge Robinson asked the parties to submit a proposed judgment for his approval which they did.  After the parties submitted said**

17

proposed judgment,  Judge Robinson issued his order, dated December 10, 1971,  granting Plaintiffs' Motion for "Summary Judgment for a Declaratory Judgment in their favor as to Federal jurisdiction over crimes by and against Indians within the Omaha Indian Reservation, Thurston County, Nebraska". In his Order, he also held that

"C.  Exclusive jurisdiction over all crimes, both felonies and misdemeanors, committed by or against Indians within the Omaha Indian Reservation, Thurston County, Nebraska, is in the United States, except as provided in Paragraph D" which provided "D.  The declaration contained in paragraph C above does not apply  on *PUBLIC* roads or           highways." (Emphasis added.)

33.   However, even after  Judge Robinson's decision and despite its affirmance by the Eighth Circuit Court of Appeals  and after the United States funded and established a Police Department and Courts for the Omaha Tribe, the Defendants [and/or their predecessors] continued to exercise jurisdiction OVER ALL VEHICLE OFFENSES for all traffic violations which occurred within Defendant, Thurston County, Nebraska, even those which  occurred on non-public roads and highways, to wit, the BIA roads and highways and the streets of the villages located on the Omaha

Reservation.

34.   However, unfortunately, as the result of benign neglect, the Omaha
Tribe erroneously allowed Defendants to exercise jurisdition of traffic
violations which have occured and will continue to occur on BIA highway
and the Omaha tribel roads, which Plaintiffs understand and believes were
designed, owned, contructed, and/or maintained by funds and efforts of the
Omaha Indian Tribe and the BIA, and not Thurston County or the State of
Nebraska.

35.   Omaha Tribal Roads #2, BIA road #201 and the street of Walthill are
NOT "*public roads or highways'*

   a.   The only evidence concerning the "public roads or highways"
before Judge Robinson was Exhibit "A" which was attached to the Affidavit
of Alfred  Du Brau.  Exhibit "A" reveals that State Highway 94  ran (and still
runs) from near Pender Nebraska,  went (and still goes) around the Village of
Walthill and terminated (and still terminates) at its  intersection with
Highway 73 [which is now known as Highway 75).

   b.   Immediately East of said intersection begins Tribal Road 2 which

19

runs approximately ten(10) miles and is known as the North Macy Loop.

Approximately one(1) mile East from the beginning of Tribal Road 2 is a road

previously known as BIA Road 202.

     c.    The 1969  Nebraska State Highway shows that there are two

state highways in Thurston County, to wit U.S. 75 and 77.  It also shows

State Highway 94  ran (and still runs) from near Pender Nebraska,  went

(and still goes) around the Village of Walthill and terminated (and still

terminates) at its  intersection with Highway 73 [which is now known as

Highway 75).

36.    Despite Judge Robinson's decision, the Defendants [and/or their

predecessors]  have continued stopping, arresting, bonding, prosecuting,

trying, sentencing and incarcerating  members of the Omaha Tribes of

Nebraska for motor vehicle offenses that occurr on Tribal and BIA roads and

on the Streets of Walthill, Nebraska which are **NOT** State County Roads or

Highways.  Consequently,  Plaintiff and those similarly situated had filed

this Complaint to enforce the decison of the Judge Robinson as affirmed by

the Eighth Circuit Court of Appeals.

### D.  PLAINTIFF MARK PARKER

### *CASE CR 07-107*

37.   On April 14, 2008, Deputy Sheriff Morris stopped Plaintiff Parker's

vehicle claim that it pulled out in front of his patrol vehicle and allegedly

failed to stop at a stop sign before  the Intersection of South Haden and

Main Streets, both streets within Walthill, Nebraska, and not a Nebraska

public road or highway.

38.   While Officer Morris was talking with Plaintiff Parker and his

passenger, Office Morris noticed two(2) opened alcoholic beverage

containers.  During Officer Morris' questioning, Plaintiff Parker admitted

having a few beers.  Officer Morris claims that Plaintiff had "bloodsot, water

eyes, show, slurred speech, lacked fine motor skill in removing is Operator's

license from hs wallet.  Officer Morris also claims that he detected the odor

of alcoholic beverages on his breath and person.

39.   On April 14, 2007, while questioning Plaintiff Parker, Officer Morris

became concern that the  passenger was destroying evidence.

Consequently, he arrested Plaintiff Parker and placed Plaintiff in his cruiser. He then turn his attention to the passenger who he placed in handcuff restraints. The passenger said he would talk with an Omaha Tribal Officer insomuch as he felt that Officer Morris did not have jurisdiction over any offense involving the passenger. Officer Morris instructed the passenger to get into his cruiser. When he did, Officer Morris continued his questioning of Plaintiff Parker.

40. Having arrested Plaintiff Parker and without advising him of his "Miranda" rights, Officer Morris opened the door to his cruiser and apparently asked Plaintiff Parker if he would provide a breathe. Plaintiff Parker apparenty agreed to provide a breath sample for the PBT. Officer Morris read the same to be 0.195 on the PBT Instrument.

41. Officer Morris then  transported Plaintiff Parker to the Sheriff's Office in Pender, Nebraska.

42. While at the Sheriff's Office, Officer Morris began observing Plaintiff Parler for the DataMaster cdm Instrument. Plaintiff Parker apparently agreed to provide a breath sample which Officer Morris read as 0.208.

22

**43.    Defendant Thurston County Sheriff Perez, charged Plaintiff Parker with**

**"[a] stop Sign violation, Neb. Rev. Stat.  60-6,148, [b] open Alcoholic**

**Beverage Container, Neb. Rev. Stat. 60-6,211.08 and [c]  driving while**

**intoxicated Alcohol, PBT used and Section 60-6,197, all violations of**

**Nebraska Revised Statutes."**

**44.    On April 18, 2007, based upon evidence provided by Deputy Sherif**

**Morris, the Thurston County Attorney's Office filed a two Count Complaint**

**against Plaintiff Parker.  Count I alledged that Mark was Driving under the**

**Influence of Alcohol in violation of Neb. Rev. Stat. 60,6,196 and Count II for**

**possessing an Open Container in his vehicle in violation of Neb. Rev. Stat.**

**60-6,211.08.**

**45.    Even though Plaintiff  Parker was arrested on April 18, 2007, he did not**

**enter  guilty plea until March 13, 2008 after numerous continuances without**

**the approprite written motions unsupported by Affidavits and without the**

**appropriate orders.  Thus, his court-appointed counsel, the Thurston County**

**prosecutor, and the Thurston County Judge failed to comply with mandatory**

**requirement of Nebraska Speedy Trial.**

23

46.     On March 13, 2009, pursuant to a plea agreement with the Defendant State of Nebrska, Plaintiff Parker pled guilty to first-offense driving under the influence, a Class W misdemeanor.  In exchange for the plea, the State dismiss an open container charge that was also pending at that time.

47.     On May 1, 2008, Defendant Judge Luebe sentenced Plaintiff Parker to a term of probation of nine(9) months.

48.     On February 13. 2009. the State filed a motion to revoke Parker's probation alleging that Parker had violated numerous conditions of the probation order.

49.     On October 4, 2010, while the motion to revoke probation was still pending in the County Court, Plaintiff Parker filed a Verified Motion to Setaside His Conviction and a Motion to Dismiss for Ineffective Assistance of Counsel which Defendant Judge Luebe denied on December 13, 2011.

50.     Plaintiff Parker then filed a timely appeal to the District Court which affirmed Defendant  Judge Luebe's judgment on June 1, 2011.

51.     On March 31, 2011, while the postconviction appeal was pending in the District Court, Defendant Luebe revoked Plaintiff Parker's probation and

sentenced him to thirty(30) days in Thurston County jail in the custody of
Defendant Sheriff Perez.

### *CASE CR 09-04 , CR 9-7 AND CR 07-107*

52.    On November 11, 2008, Plaintiff Parker was involved in a motor vehicle
accident in which the car, which he was driving, slide into a steel post.

53.    Deputy Sheriff Briggs, who, along with a Macy Police Officer, was
investigating a burglary in Walthill, Nebraska when he heard a noise that
sounded like an automobile accident at approximately 06:06 a.m.

54.    The Macy Police Officer immediately responded and had requested a
rescue squad by 06:07 a.m.  Officer Briggs did not arrive until 06:16.

55.    When he arrived, Officer Briggs observed that an automobile had run
off the south side of Slade *Street* colliding with a steel gate located
approximately 100 feet from Tallman *Street.*  Plaintiff Parker's vehicle had
left tire marks in the snow.

56.    After he had arrived, Officer Briggs noticed that Tyressa McCauley had
remained in the vehicle and that she had injured her face.

57.   At approximately 06:36, Tyressa McCauley and Plaintiff Parker were taken by the rescrue squad to the Winnebago Indian Hospital.

58.   No information concerning the extent of the injuries, if any, was contained in any of Officer Briggs' reports.  Nor was any medical witness identified in the witness list that the Defendant Goff's office provided on May 20, 2009.

59.   Officer Briggs recommended that Plaintiff Parker be charged with (a) reckless driving and (b) driving while suspended.

60.   On January 9, 2009, the office of Defendant Goll's office charged Plaintiff Parker for "failure to stop following accident involving injury at accident scene the accident as a "felony" in violation of Neb. Rev. Stat. 60-695.  The office also charged him with (a)  Willfull Reckless Driving and (b) Operating a Motor vehicle During Time of Suspension, both Class III Misdemeanors.

61.   On February 20,2009, Defendant Judge Luebe appointed an attorney to represent Plaintiff Parker.  On March  19, 2009, without an affidavit or order, the attorney requested a continuance.

62.   On June 25, 2009, the Attorney, on Plaintiff Parker's behalf, waived a

preliminary hearing.

63.   On July 28, 2009, the Defendant Goll's office changed the violation

from a misdemeanor (Neb. Rev. Stat. 60-696)  to a felony (Neb. Rev. Stat. 60-

697).

64.   With no reason recorded, no written motion and no affidavit filed,

Plaintiff Parker's attorney requested and obtained a continuance.

65.   On October 7, 2009, Plaintiff Parker was arraigned.  He pled not guilty.

66.   On February 9, 2010, the period to have the matter resolved had

expired pursuant to Nebraska's Speedy Trial Act.

67.   On October 8, 2009, a pretrial conference was held and Defendant

Judge Luebe set it for trial on January 15, 2010.

68.   During the period from October 7, 2009 to  July 14, 2010, Plaintiff

Parker's Attorney filed four(4) more requests for continuances without any

justification, written motion or affidavit.

69.   On June 30, 2010, the office of Defendant Goff filed an Amended

27

Complaint of DUI 2nd aggravated pursuant to a plea agreement in CR 09-5 (County Court) and CR 09-7 (District Court).

70.   On July 15, 2010, Plaintiff Parker entered a guilty plea to the Amended Complaint.

71.   On July 30, 2010, the office of Defendant Goff dismissed the felony complaint pursuant to a plea agreement.

72.   On October 15, 2010, Plaintiff Parker filed a motion to withdraw his guilty plea.

73.   On December 13, 2010, Defendant Judge Luebe denied Plaintiff Parker's motion to withdraw his guilt plea.

74.   Defendant Judge Luebe held an enhancement hearing was held; found enhancement;  and took sentencing under advisement.

75.   On March 31, 2011, while the postconviction appeal was pending in the District Court, Defendant Luebe revoked Plaintiff Parker's probation and sentenced him to thirty(30) days in Thurston County jail in the custody of Defendant Sheriff Perez.

**76.  Plaintiff Parker then filed a motion to suspend execution of the sentence which was denied by Defendant Judge Luebe.**

### Appeals of Plaintiff Parker's Convictions

**77.  Plaintiff Parker filed appeals in both cases in which he had pled guilty.**

**78.  The basis for his appeals were many.  However, the major basis was that the Defendants' lack of jurisdiction.  The alledged offenses occurred on the "STREETS OF WALTHILL", and not on a state highway or road.**

### B.  Ms Gloria Payer

**79.  Vince Oordt, a Deputy Sheriff employed by the Defendant, Thurston County, arrested Plaintiff Payer on November 4, 2010 at approximatelyt 1:30 a.m.  He alledgely observed Plaintiff Payer on Omaha Tribal Road 2, followed her vehicle for approximately one mile, and then stopped her as she turned onto Bureau of Indian Affairs Road 201.   Omaha Tribal Road 2 and BIA Road 201 were owned and maintained by the Omaha Tribe of Nebraska.**

**80.  The purported reason that Deputy Sheriff stopped Plaintiff Payer was**

29

because she supposely crossed the "center-line" five times.  However,

Omaha Tribal Road 2 had no center line.   It had no lights; it had steep hills;

and, it  was full of numerous ruts.

81.    Deputy Sheriff Oordt claims that she had asked Plaintiff to get out of

her vehicle nine(9) times.  Plaintiff,  Ms Payer,  asked Deputy Sheriff Oordt

"to call an Omaha  Nation Officer to the scene," and he "advise her that [he]

was not going to do that."

82.  Deputy Oordt claimed that

     a.  He could smell the odor of an alcoholic beverage;

     b.  Ms Payer had a slurred speech pattern and bloodshot, glossy eyes.

     c.  When she got out of the vehicle, Plaintiff Ms Payer staggered a bit

and used the car door and body for support.

83.    Deputy Oordt supposedly asked Plaintiff Ms Payer if she felt

intoxicated; and she said no.  He asked her if she would submit to field

sobriety maneuvers; and she said no.

84.    Thereafter Deputy Oordt " plac[ed Plaintiff Payer]  under arrest for DUI

and Driving While Revoked". Afterwards, Deputy Oordt  requested that  Ms

Payer "get into [his] vehicle; and, when she did, he "transported [Ms Payer]

30

to the Thurston County Jail."

85.   Defendant Judge Luebe set bond at $30,000.

86.   "J Ave" and "N. Main" <u>are not</u> "highways in [Thurston] County" nor are they "public roads"  but rather "J Ave", which is also call Tribal Road 2  is a Tribal Road and "N. Main" is a Bureau of Indian Road, also known as "BIA Road 201" and also an extension of Tribal Road 2.

87.   Deputy Oordt prepared a Report from which he omitted  crucial facts including that

(a)  he had followed the vehicle the length of Tribal Road # 2 which is approximately 1 ¼ miles  .

(b)  Tribal Road contained no visible center line ; had many  ruts; and steep hills.

(c)  Tribal Road #2 had no lights.

88.   Apparently, based upon Deputy Oordt's report,  Jeffrey Kurtz, Deputy Thurston County Attorney, filed Charges in a two-count Complaint  on November 4, 2010;  on March 3, 2010, he refiled the Charges in an two-count Information; and, then, on March 10, 2010, he refiled a two count Amended Information because of scrivener's errors.

89. On August 11, 2010, without proper jurisdiction, William Binkard,

District Judge, sentenced  Plaintiff, Ms Payer, to the custody of the Sheriff

of Thurston County to be taken to an institution under the jurisdiction of the

Department of Correctional Services of the State of Nebraska for a peirod of

not less than 23 months and no more than 13 months at hard labor.

90. Plaintiff Payer, was imprisoned in the Community Corrections Center,

Lincoln, Nebraska pursuant to an order which the District Court of Thurston

County for which it did not have jurisdiction as the result of an arrest by the

for an alleged violation over which it did not have jurisdiction.

## FIRST CAUSE OF ACTION

91.   Plaintiff Parker  realleges and incorprates paragraphs 1-78.

92.   By questioning, arresting, jailing, prosecuting, sentencing and

incarcerating Plaintiff Parker, Defendants violated his constitutional,

statutory, treaty, and agreement rights in so much as the Defendants lack

the jurisdiction to do so.

## SECOND CAUSE OF ACTION

93.   Plaintiff Payer  realllege and incorprates paragraphs 1-36 and 79-92.

**94.** **By questioning, arresting, jailing, prosecuting, sentencing and**

**incarcerating Plaintiff Payer, Defendants violated her constitutional,**

**statutory, treaty, and agreement rights in so much as the Defendants lack**

**the jurisdiction to do so.**

**WHEREFORE, Plaintiffs Mark Parker and Gloria Payer, on behalf of**

**themself and all others similarly situated requests respectfully requests of**

**this Court the following relief:**

**1.** **An order certifying that the action may be maiintained as a class**

**action for the Class and appointing Paintiff's counsel to represent the class.**

**2.** **A declaration that the DEFENDANTS did not and do not have**

**jurisdiction for any offense involving the operation of motor vehicles that**

**occurred on the streets of Walthill, Nebraska and/or on Tribal and BIA Roads**

**located within the Omaha Tribe Reservation and an injunction that**

**precludes said Defendants from taking any action concerning any offense**

**involving the operation of motor vehicles that occurred on the streets of**

**Walthill, Nebraska and/or on Tribal and BIA Roads located within the Omaha**

**Tribe Reservation.**

3. The setting aside the convictions of the Plaintiffs for any offense involving the operation of motor vehicles that occurred on the streets of Walthill, Nebraska and on Tribal and/or BIA Roads located within the Omaha Tribe Reservation.

4. The expungement from all county and state records any and all references to arrests, informations, complaints, convictions, and sentencings for offenses involving the operation of motor vehicles that occurred on the streets of Walthill, Nebraska and on Tribal and/or BIA Roads within the Omaha Tribal Reservation

5. The reimbursement to the Plaintiffs of all fines and costs paid for violations involving the operation of motor vehicles that occurred on the streets of Walthill, Nebraska and on Tribal and/or BIA roads.

6. The immediate release of any member of the class who is presently incarcerated by the Defendants for a violation involving the operation of a motor vehicle that occurred on the streets of Walthill, Nebraska and/or on BIA roads

7. The immediate dismissal of any member of the class who is presently charged for a violation involving the operation of a motor vehicle

that occurred on the streets of Walthill, Nebraska and/or on BIA roads.

8.    The payment of damages to the Plaintiffs

9.    The award of attorney fees and costs.

10.    The granting of such other relief as to the Court seems just, fair

and right to do.

Plaintiffs, Mark Parker and
Gloria Payer

By: Paul W. Madgett, #12564
Attorney at Law
Pro Bono Publico
1111 South 90th Street
Omaha, Nebraska 68124
(402) 594-6545
paulwayne41@yahoo.com